No. 24-1509

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

AMBER LAVIGNE,
*Plaintiff-Appellant*,

v.

GREAT SALT BAY COMMUNITY SCHOOL BOARD; SAMUEL ROY, IN HIS OFFICIAL CAPACITY AS A SOCIAL WORKER AT THE GREAT SALT BAY COMMUNITY SCHOOL; KIM SCHAFF, IN HER OFFICIAL CAPACITY AS THE PRINCIPAL AT THE GREAT SALT BAY COMMUNITY SCHOOL; LYNSEY JOHNSTON, IN HER OFFICIAL CAPACITY AS THE SUPERINTENDENT OF SCHOOLS FOR CENTRAL LINCOLN COUNTY SCHOOL SYSTEM; JESSICA BERK, IN HER OFFICIAL CAPACITY AS A SOCIAL WORKER AT THE GREAT SALT BAY COMMUNITY SCHOOL,
*Defendants-Appellees*.

On Appeal from the Judgment of the United States
District Court for the District of Maine
(Dist. Ct. No. 2:23-cv-00158-JDL)

## BRIEF OF *AMICI CURIAE* STATES OF SOUTH CAROLINA, ALASKA, GEORGIA, IDAHO, IOWA, KANSAS, LOUISIANA, MISSOURI, NEBRASKA, NORTH DAKOTA, SOUTH DAKOTA, AND WEST VIRGINIA SUPPORTING PLAINTIFF-APPELLANT AND REVERSAL

ALAN WILSON
*Attorney General*
Robert D. Cook
*Solicitor General*
J. Emory Smith, Jr.
*Dept. Solicitor General*
Thomas T. Hydrick
*Asst. Dept. Solicitor General*
Joseph D. Spate
*Asst. Dept. Solicitor General*
    *Counsel of Record*

STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY GENERAL
1000 Assembly St.
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

July 17, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTERESTS OF AMICI ........................................................................1

INTRODUCTION  ................................................................................2

SUMMARY OF ARGUMENT .................................................................3

ARGUMENT ......................................................................................3

I.      School Districts Across the Country Have Undermined Parental Rights by Adopting Witholding Policies.................................................3

II.      The District Court Erred in its *Monell* Analysis..........................6

     A. The District Court Improperly Disregarded Allegations of a Withholding Policy................................................................7

     B. The District Court Misapplied Precedent in Concluding that the Challenged Action Resulted from the Withholding Policy.................12

     C. The District Court Failed to Consider the Legal Significance of the Withholding Policy Allegations. .........................................13

CONCLUSION...................................................................................15

ADDITIONAL COUNSEL ...................................................................17

CERTIFICATE OF COMPLIANCE....................................................18

CERTIFICATE OF SERVICE ............................................................19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abdisamad v. City of Lewiston*,
  960 F.3d 56 (1st Cir. 2020) ............................................................. 12, 13
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................8
*Britton v. Maloney*,
  901 F.Supp. 444 (D. Mass. 1995) ......................................................14
*Doe1 v. Boston Public Schools*,
  No. 17-cv-11653-ADB, 2019 WL 1005498 (D. Mass. 2019) ...............9
*Estate of Osuna v. County of Stanislaus*,
  392 F.Supp.3d 1162 (E.D. Cal. 2019).................................................14
*Garcia-Catalan v. United States*,
  734 F.3d 100 (1st Cir. 2013) ......................................................8, 9, 11
*Johnson v. City of Shelby, Miss.*,
  574 U.S. 10 (2014)............................................................................14
*Lavigne v. Great Salt Bay Cmty. Sch. Bd.*,
  No. 2:23-CV-00158-JDL, 2024 WL 1975596 (D. Me. May 3, 2024)......... 7, 8, 12
*Mirabelli v. Olson*,
  691 F. Supp. 3d 1197 (S.D. Cal. 2023) ................................................6
*Mitchell v. Twp. of Pemberton*, 09-810(NLH)(AMD),
  2010 WL 2540466 (D.N.J. 2010) .......................................................14
*Monell v. Department of Social Services of the City of New York*,
  436 U.S. 658 (1978)............................................................................6
*Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*,
  268 U.S. 510 (1925)............................................................................5
*Regis v. City of Boston*,
  No. 19-CV-10527-IT, 2020 WL 2838862 n.2 (D. Mass. 2020).......................9, 10
*Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*,
  No. 522CV04015HLTGEB, 2022 WL 1471372 (D. Kan. May 9, 2022)..............5
*Rodriguez-Reyes v. Molina-Rodriguez*,
  711 F.3d 49 (1st Cir. 2013) ......................................................8, 9, 10
*Troxel v. Granville*,
  530 U.S. 47 (2000)........................................................................5, 13
*Wisconsin v. Yoder*,
  406 U.S. 205 (1972)............................................................................5

*Wynn v. Carey*,
  582 F.2d 1375 (7th Cir. 1978) ................................................................. 1

**Rules**

Fed. R. App. P. 29(a)(2) ........................................................................ 18
Fed. R. Civ. P. 12(b)(6) ........................................................................ 9
Federal Rule of Appellate Procedure 29(a)(5) ...................................... 18

**Other Authorities**

*The Paradoxical Structure of Constitutional Litigation*,
  75 FORDHAM L. REV. 1913 (2007) ..................................................... 15
*Toxic Privacy: How the Right to Privacy Within the Transgender Student Parental Notification Debate Threatens the Safety of Students and Compromises the Rights of Parents*,
  15 DREXEL L. Rev. 327 (2023) ............................................................ 4

## INTERESTS OF AMICI

Amici curiae are the States of South Carolina, Alaska, Georgia, Idaho, Iowa, Kansas, Louisiana, Missouri, Nebraska, North Dakota, South Dakota, And West Virginia.

Amici States are committed to respecting parental rights, and many of the undersigned States have laws in place to ensure that those rights are protected by state law. In fact, some States have expressly banned policies similar to the withholding policy challenged in this case.[1] Whether explicitly or implicitly, these laws acknowledge that the "family is the primary unit through which social values and moral precepts are transmitted to the young" and that the States have an interest in not "undermining" the family unit. *Wynn v. Carey*, 582 F.2d 1375, 1385 (7th Cir. 1978). Withholding policies often not only violate these state laws but also infringe fundamental, long-standing constitutional rights.

In the decision below, the district court improperly granted a motion to dismiss, applying a flawed legal analysis and prematurely foreclosing a parent's constitutional claims to vindicate her parental rights. Amici States submit this amicus brief to assist this Court in a proper analysis of her claims.

---

[1] For the sake of consistency, Amici refer to these policies as "withholding policies," recognizing that schools use a variety of terms to refer these types of policies, including parental notification policies and parental exclusion policies.

1

## INTRODUCTION

The Appellant in this case sued her local school board and several school officials after she discovered that her child's school allegedly withheld information about her child's gender identity. Compl. at ¶ 3. Specifically, the Appellant alleges that school officials failed to inform her that multiple school officials were using a new name for her child and were referring to her child by new gender pronouns. Compl. at ¶ 26. The Appellant also alleges that school officials failed to inform her that a school employee gave her child two chest binders to assist in the child's gender transition. Compl. at ¶ 21.

After the Appellant discovered her child's chest binder, she allegedly met with the school's principal and the school district's superintendent to express her concerns. Compl. at ¶ 32. She also allegedly expressed her concerns at a school board meeting. Compl. at ¶ 34. The board allegedly issued several statements after these concerns were expressed, which were attached as exhibits to the complaint.

The Appellant's Complaint asserts both substantive and procedural due process claims under the Fourteenth Amendment. The school board and the school officials subsequently moved to dismiss the Appellant's claims. In dismissing the school board, the district court concluded that the Appellant failed to plead facts to establish municipal liability for the school board.

**SUMMARY OF ARGUMENT**

In recent years, school districts across the country have begun to implement withholding policies that limit what information schools can reveal to parents about their child's gender identity. *See* Sara Randazzo, *Should Schools Tell Parents When Kids Say They're Transgender?*, THE WALL STREET JOURNAL (Sept. 22, 2023), https://tinyurl.com/v7u2tvkj. Although the justifications for the policies differ, many of these policies represent an improper infringement on the constitutional rights of parents.

The district court improperly dismissed the Appellant's challenge to a withholding policy in this case, erring in its analysis of municipal liability. In doing so, the district court prematurely foreclosed the Appellant's parental rights claims.

**ARGUMENT**

**I.       School Districts Across the Country Have Undermined Parental Rights by Adopting Withholding Policies.**

Thousands of schools across the country have implemented policies that are designed to withhold a student's transgender status from parents. *See* Parents Defending Education, List of School District Transgender - Gender Nonconforming Student Policies (last updated: July 1, 2024), https://tinyurl.com/mwp2sspa. By one estimate, these policies apply to over 11 million students in 37 states across the country, including students in Maine. *See id*.

Proponents of these policies often invoke the "right to privacy," citing students' purported privacy interests in their gender identity. *See* Stephen McLoughlin, *Toxic Privacy: How the Right to Privacy Within the Transgender Student Parental Notification Debate Threatens the Safety of Students and Compromises the Rights of Parents*, 15 Drexel L. Rev. 327, 341 (2023) ("Transgender Rights Advocates generally use the 'right to privacy' to challenge laws or policies that force individuals to expose their gender identity without consent."). Some districts, in fact, expressly describe their withholding policy in a privacy section. *See, e.g.*, Portland, Maine Public Schools, "Transgender and Gender Expansive Students," https://tinyurl.com/6857v38d (last accessed July 3, 2024) ("Privacy and Confidentiality: The district shall ensure that student records shall be kept confidential in accordance with applicable state, local and federal privacy laws. School staff shall comply with the student's wishes regarding disclosure of their transgender status to others, including but not limited to parents or guardians, students, volunteers or other school staff, unless the student has explicitly authorized the disclosure or unless legally required to do so.").

Other times, proponents of these policies invoke health concerns, arguing that the policies are necessary to promote the physical or mental health of students. *See, e.g.*, Westford, Massachusetts Public Schools, "Transgender and Gender Nonconforming Student," https://tinyurl.com/neazxb2s (last accessed July 3, 2024)

("In some cases, however, notifying parents/guardians carries risks for the student. Prior to notification of any parent/guardian regarding the transition process, school staff should work closely with the student to assess the degree to which, if any, the parent/guardian will be involved in the process and must consider the physical and mental health, well-being, and safety of the transitioning student.").

Whatever their justifications, these policies often fail to account for the long-recognized right of parents to "direct the upbringing and education of children under their control." *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 535–35 (1925). This right, considered by some to be "the oldest of the fundamental liberty interests recognized" by the Supreme Court, is "fundamental" and secures the liberty interest of parents in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 47, 65 (2000). The Supreme Court has consistently recognized this right for nearly one hundred years, deeming the right to be "beyond debate." *See Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972).

To vindicate their rights, parents across the country have sued to enjoin withholding policies with some degree of success. *See Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*, No. 522CV04015HLTGEB, 2022 WL 1471372, at *8 (D. Kan. May 9, 2022) ("[T]he District's claimed interest is an impermissible one because it is intended to interfere with the parents' exercise of a constitutional right to raise their children as they see fit. And whether the District likes it or not, that

constitutional right includes the right of a parent to have an opinion and to have a say in what a minor child is called and by what pronouns they are referred."). Regarding these types of withholding policies, one district court observed that the policy of "elevating a child's gender-related choices to that of paramount importance, while excluding a parent from knowing of, or participating in, that kind of choice, is as foreign to federal constitutional and statutory law as it is medically unwise." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1212 (S.D. Cal. 2023).

After discovering that her child's local school had withheld information about her child's gender identity and gender transition, the Appellant in this case attempted to do the same. As explained below, the district court erred in dismissing the Appellant's claim against the district, prematurely foreclosing her opportunity to vindicate her "fundamental liberty interests."

## II.    The District Court Erred in its *Monell* Analysis.

In dismissing the Appellant's claim, the district court concluded that the Appellant failed to adequately plead municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Specifically, the district court concluded that the Appellant failed to adequately allege any of three possible theories of municipal liability, including municipal liability based on the existence of an unwritten policy or custom.

The district court appears to have rejected this theory of municipal liability for two reasons. First, the court concluded that there were insufficient factual allegations to establish the existence of an unwritten policy or custom, finding that "conclusory statements" regarding the existence of a withholding custom were "not supported by additional allegations that, if proven, would demonstrate the existence of a custom that could form a basis for municipal liability under *Monell*." *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, No. 2:23-CV-00158-JDL, 2024 WL 1975596, at *7 (D. Me. May 3, 2024).

Second, the court appears to also have concluded that there were insufficient factual allegations to "plausibly demonstrate that the challenged actions resulted from an unconstitutional unwritten custom . . . ." *Id.* Stated differently, the court appears to have held that even if there was an unwritten policy or custom in the case, the Appellant failed to adequately allege that the policy or custom caused the challenged conduct.

Both conclusions were error, misapplying Supreme Court precedent and precedent from this Court. Further, the court failed to consider the legal significance of the withholding policy allegations generally.

## A. The District Court Improperly Disregarded Allegations of a Withholding Policy.

As a general matter, the district court appears to have misapplied the standard for a motion to dismiss. Uncontroversially, the district court correctly noted that it

was obligated to distinguish between factual allegations, which must be credited as true, and legal conclusions, which need not be. *Lavigne*, 2024 WL 1975596, at *3. In identifying this standard, the court quoted portions of this Court's decisions in *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013), and *Garcia-Catalan v. United States*, 734 F.3d 100 (1st Cir. 2013). The court overlooked, however, this Court's full and nuanced discussions of the application of that standard in those cases.

For example, in *Rodriguez-Reyes*, this Court noted that even certain "conclusory statement[s]" may be sufficient for pleading purposes if those conclusory allegations "may be inferable from other allegations in the complaint." 711 F.3d at 55. Quoting the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007), this Court noted that "[t]he relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" 711 F.3d at 55.

Similarly, in *Garcia-Catalan*, this Court cautioned district courts against applying the motion to dismiss standard "too mechanically." 734 F.3d at 101. This Court provided the following guidance to district courts: "[w]e emphasize that the complaint must be read as a whole. As we have explained, '[t]here need not be a

one-to-one relationship between any single allegation and a necessary element of the cause of action. For pleading purposes, circumstantial evidence often suffices to clarify a protean issue.'" 734 F.3d at 103 (quoting *Rodriguez-Reyes*, 711 F.3d at 55–56).

In light of these instructions, district courts in this circuit routinely deny motions to dismiss where there are some allegations regarding municipal liability stemming from a policy or custom. District courts have denied motions to dismiss where a pattern of behavior creates "a reasonable inference" regarding the existence of a municipal custom. *See Doe1 v. Boston Public Schools*, No. 17-cv-11653-ADB, 2019 WL 1005498, at *9 (D. Mass. 2019). Other courts have denied a motion to dismiss where the challenged conduct itself suggests that officials were acting pursuant to a policy. *See Regis v. City of Boston*, No. 19-CV-10527-IT, 2020 WL 2838862, at *3 n.2 (D. Mass. 2020) ("This is not to say that every allegation of a constitutionally infirm policy or custom should survive a challenge under Fed. R. Civ. P. 12(b)(6). . . . But here there is no bare allegation. The uncontested events that give rise to the complaint—that the City raided the wrong home in the middle of the night—give plausibility to the allegation that the city's policies . . . frustrates the right secured to the [plaintiff] and others under the federal Constitution.").

In this case, the district court applied the motion to dismiss standard "too mechanically," overlooking allegations that support the existence of an unwritten

withholding policy in this case. As an initial matter, it is worth emphasizing that the Appellant's complaint contains multiple references to an unwritten withholding policy. Compl. at ¶ ¶ 27, 29. And although generic, blanket allegations regarding a custom or policy standing alone might warrant dismissal in some circumstances, other factual allegations create an inference that an unwritten withholding policy was in place in this case. *See Rodriguez-Reyes*, 711 F.3d at 55.

Appellant's factual allegations regarding the scope and seriousness of the challenged conduct "give plausibility" to the allegation that the school was acting pursuant to an unwritten policy. *See Regis*, 2020 WL 2838862, at *3 n.2. Here, the Appellant alleges that multiple school officials were involved in the withholding at issue in this case. Compl. at ¶ 28. And the withholding itself allegedly went well beyond the school's withholding of a child's preferred name or pronoun—a serious enough issue. It also allegedly extended to the school's active participation in assisting the child's gender transition by providing the child with a device to enable such a transition. Compl. at ¶ 20. The scope and seriousness of these allegations give "plausibility" to the Appellant's claim that an unwritten policy or custom was in place.

Allegations regarding the school board's subsequent actions give further plausibility to the allegation regarding the existence of an unwritten policy. After the Appellant brought the school's conduct to the attention of the school board, the board

allegedly issued a statement defending the conduct, citing students' "right to privacy"—a theory, as mentioned above, that is frequently invoked to justify withholding policies. Compl. at ¶ 40. The statement, which was attached to the complaint, also noted that the board had "policies" in place to respond to parental or student concerns that "comply with Maine law, which protects the rights of all students and staff, regardless of gender/gender identity, to have equal access to education, the supports and services available in our public schools, and the student's right to privacy regardless of age." Ex. 3 to Compl. In a second statement, the board also insisted that all relevant policies were followed. Compl. at ¶ 42.

Additionally, the school board's written transgender policy gives further plausibility to the allegation that an unwritten policy also exists. Ex. 6 to Compl. Although that policy does not explicitly direct employees to withhold information from parents, it does note that a "student plan should address how to deal with disclosures that the student is transgender. In some case, a student may want school staff and students to know, and in other cases the student may not want this information to be widely known." *Id*.

Taken together and applying this Court's precedent, these factual allegations create a reasonable inference that an unwritten withholding policy or custom was in place in this case. *See Garcia-Catalan*, 734 F.3d at 101–03.

**B. The District Court Misapplied Precedent in Concluding that the Challenged Action Resulted from the Withholding Policy.**

The district court misapplied this Court's precedent in concluding that the complaint "fails to allege facts that, if proven, would plausibly demonstrate that the challenged actions resulted from an unconstitutional unwritten custom . . . ." *Lavigne*, 2024 WL 1975596, at *7. In support of its conclusion, the district court cited this Court's decision in *Abdisamad v. City of Lewiston*, 960 F.3d 56 (1st Cir. 2020), purportedly for the proposition that there can be no municipal liability for the school board because the complaint fails to allege that the challenged withholding resulted from the unwritten withholding policy itself.

In doing so, the district court applied *Abdisamad* too broadly. In *Abdisamad*, this Court considered whether a municipality should be liable for the drowning death of a student on a field trip. In affirming the district court's dismissal of claims against the municipality, this Court noted that the legal theory of the case itself precluded municipal liability because the complaint alleged that the failure of individual defendants to follow protocol caused the student's death—not the protocol, policy, or custom itself. *See Abdisamad*, 960 F.3d at 60–61 ("They include no facts whatsoever about a Lewiston policy that would be unconstitutional and create municipal liability. To the contrary, the amended complaint alleges that R.I.'s death result from defendants' 'failure . . . to follow their protocols,' rather than from defendants' actions that were consistent with a Lewiston policy or custom. That

allegation cannot serve as the basis for municipal liability and in fact precludes such liability."). *Abdisamad* thus stands for the limited proposition that there can be no municipal liability where a complaint fails to allege that the municipality's policy or custom caused the injury.

In contrast to *Abdisamad*, the Appellant's complaint includes multiple allegations that the Appellees' unwritten policy caused the challenged conduct in this case. Compl. at ¶ ¶ 21, 59, 65, 75, 91. These allegations are materially distinguishable from the allegations in *Abdisamad*, which involved allegations that the defendants failed to follow proper policies. Consequently, the district court erred in relying on *Abdisamad* to conclude that the Appellant failed to allege that the challenged conduct resulted from an unwritten policy or custom.

## C. The District Court Failed to Consider the Legal Significance of the Withholding Policy Allegations.

Finally, the district court failed to consider the legal significance of the Appellant's allegations regarding the unwritten withholding policy. Such allegations have legal significance for at least two reasons.

First, the allegations implicate the constitutional rights of the Appellant— namely her fundamental right to direct the upbringing of her child. *See Troxel*, 530 U.S. at 65. Although the district court purported to sidestep the question of constitutionality, the court failed to appreciate the Supreme Court's repeated

admonition that no "heightened pleading rule" exists for constitutional cases. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

Second, the district court failed to appreciate that the allegations raised in this case, by their very nature, are difficult to verify at the motion to dismiss stage. As an initial matter, it is worth noting that the policy as alleged in this case is in the hands of the board or district staff, making it difficult for the Appellant to describe its specifics in detail. In recognition of this precise difficulty, district courts around the country, including courts in this circuit, have declined to grant a motion to dismiss in such circumstances. *See, e.g.*, *Estate of Osuna v. County of Stanislaus*, 392 F.Supp.3d 1162, 1174 (E.D. Cal. 2019) ("The court concludes that the details of the alleged policy or custom, however, is a topic properly left to development through discovery. It is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork."); *Mitchell v. Twp. of Pemberton*, No. CIV.09-810(NLH)(AMD), 2010 WL 2540466, at *6 (D.N.J. 2010) ("[I]nformation concerning a town's customs or policies, the policymakers' motivations behinds such policies, or the facts surrounding police department customs, are typically unavailable to an outside . . . ."); *Britton v. Maloney*, 901 F.Supp. 444, 42 (D. Mass. 1995) ("It would make it virtually impossible for the existence of unconstitutional policies such as those alleged by

plaintiffs ever to be proven in court, since the victims of such policies are unlikely to be privy to facts sufficient to connect the policy to specific acts prior to discovery.").

Further, the Appellant has alleged that the policy or custom at issue is unwritten, making the precise scope of the policy even more difficult to verify at the motion to dismiss stage. Pamela S. Karlan, *The Paradoxical Structure of Constitutional Litigation*, 75 FORDHAM L. REV. 1913, 1920 (2007) ("But there are many areas where it is exceptionally difficult to show that the challenged action involved an unwritten policy.").

In short, the district court failed to appreciate the legal significance of the Appellant's claims in this case.

## CONCLUSION

In the span of just a few years, withholding policies have proliferated around the country, threatening to undermine the family unit and to infringe parental rights. In this case, the district court prematurely closed the door on a parental rights claim, conducting a flawed *Monell* analysis and failing to credit allegations regarding the existence of a withholding policy in this case. In light of these errors, this Court should reverse the district court's dismissal of this case.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

s/Joseph D. Spate
ALAN WILSON
*Attorney General*
Robert D. Cook
*Solicitor General*
J. Emory Smith, Jr.
*Dept. Solicitor General*
Thomas T. Hydrick
*Asst. Dept. Solicitor General*
Joseph D. Spate
*Asst. Dept. Solicitor General*
  *Counsel of Record*
STATE OF SOUTH CAROLINA
OFFICE OF THE ATTORNEY GENERAL
1000 Assembly St.
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

# ADDITIONAL COUNSEL

TREG TAYLOR
Attorney General of Alaska

CHRISTOPHER M. CARR
Attorney General of Georgia

RAÚL LABRADOR
Attorney General of Idaho

BRENNA BIRD
Attorney General of Iowa

KRIS KOBACH
Attorney General of Kansas

LIZ MURRILL
Attorney General of Louisiana

ANDREW BAILEY
Attorney General of Missouri

MICHAEL T. HILGERS
Attorney General of Nebraska

DREW WRIGLEY
Attorney General of North Dakota

MARTY JACKLEY
Attorney General of South Dakota

PATRICK MORRISEY
Attorney General of West Virginia

**CERTIFICATE OF COMPLIANCE**

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,437 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman font) using Microsoft Word (the same program used to calculate the word count).

The Amici States are authorized to file this brief without the consent of the parties or the leave of the Court. Fed. R. App. P. 29(a)(2).

s/Joseph D. Spate
Joseph D. Spate

July 17, 2024

**CERTIFICATE OF SERVICE**

I certify that on July 17, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. I certify that the foregoing document is being served on this day to all counsel of record registered to receive a Notice of Electronic Filing generated by CM/ECF.

<u>s/Joseph D. Spate</u>
Joseph D. Spate

July 17, 2024